UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GALE NESTOR | : | CIVIL ACTION NO. 3:03CV359 (AVC) |
| Plaintiff, | : | |
| VS. | : | |
| PRATT & WHITNEY | : | |
| Defendant. | : | MARCH 2, 2004 |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**I. PRELIMINARY STATEMENT**

Last year, Pratt & Whitney, a division of United Technologies Corp. ("Pratt") exhausted its appeals and paid a final judgment arising from a 1999 decision from the Connecticut Commission on Human Rights and Opportunities ("CHRO") which concluded that Pratt discriminated against an employee, Gale Nestor, in violation of Connecticut law. That judgment made Ms. Nestor -- the plaintiff in the present action -- whole and awarded her all the damages that she was seeking under Connecticut law. Plaintiff, however, has now filed this second federal court action also alleging gender discrimination against Pratt & Whitney to recover alleged damages that she could have sought under Connecticut law, but did not seek in her first claim, namely, attorneys' fees, compensatory damages and punitive damages. Plaintiff's attempt to relitigate her gender

discrimination claim is barred by res judicata. This court should grant Defendant's Motion for Summary Judgment.

## II.   BACKGROUND FACTS

### A.   Plaintiff's Employment is Terminated And She Files A Discrimination Complaint

Pratt & Whitney employed Plaintiff as a machinist in its East Hartford, Connecticut facility. (See Defendant's Local Rule 56(a)1 Statement ("56(a)1 Statement") ¶ 1). Pratt & Whitney terminated Plaintiff's employment on September 2, 1992 after she had an altercation with a male employee. (Id. ¶ 2.)[1] On November 5, 1992, Plaintiff filed a Complaint (the "First Action") with the CHRO alleging that she was discriminated against based on her gender in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60(a)(1) ("CFEPA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Id. ¶ 4.) Plaintiff's complaint was also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 5.) A copy of the complaint filed in the First Action is attached hereto as Exhibit A.

### B.   Plaintiff's Options for Pursuing a Complaint Under State and Federal Law

Connecticut law provides Ms. Nestor two different forums in Connecticut in which to pursue her discrimination complaint. Conn. Gen. Stat. §§ 46a-83; 46a-84; 46a-100; 46a-101, attached hereto as Ex. D. First, she could litigate her discrimination claims at the CHRO. Conn.

---

[1] She was later reinstated, without back pay, after a labor arbitration in early 1993. (Id. ¶ 3.)

Gen. Stat. §§ 46a-83; 46a-84, Ex. D. In such a case, the CHRO is obligated to investigate a complainant's claim, and if reasonable cause to believe discrimination occurred is found, to conduct a public hearing on the matter. Id. Second, Ms. Nestor could remove her discrimination claim from the CHRO and bring an action directly in Connecticut Superior Court.[2] Conn. Gen. Stats. §§ 46a-100; 46a-101, Ex. D. The remedies available in each of the two forums are different. Bridgeport Hospital v. Commission on Human Rights and Opportunities, 232 Conn. 91 (1995). A plaintiff who is successful in her CFEPA claim in Superior Court may be awarded back pay, reinstatement, compensatory damages, punitive damages, attorney fees and other equitable relief. Conn. Gen. Stat. § 46a-104, Ex. D. A plaintiff who is successful in her CFEPA claim before the CHRO, however, may not be awarded compensatory damages, punitive damages and attorney fees. Bridgeport Hospital, 232 Conn. 91 (1995).

When claims are also brought to the EEOC on Title VII grounds, as they were in this matter, Ms. Nestor also had a third option: namely, she could withdraw her claims from both the CHRO and EEOC and bring an action in federal court.[3] 42 U.S.C. § 2000e-5(f)(1). A successful

---

[2] Connecticut law provides that an individual may request a release of her complaint from the CHRO after it has been pending there for 210 days. Conn. Gen. Stat. § 46a-101, Ex. D. The CHRO must grant a release within 10 days, unless the matter is scheduled for a public hearing or the CHRO believes that the matter will be resolved in thirty days. Id. After obtaining such a release, the individual may file her discrimination complaint in Connecticut Superior Court. Conn. Gen. Stat. § 46a-100, Ex. D.

[3] An individual may request that the EEOC release her complaint 180 days after it has been filed. 42 U.S.C. § 2000e-5(f)(1). If the complaint is filed first with a state human rights agency,

plaintiff in a Title VII action may recover back pay, reinstatement, compensatory damages, punitive damages, attorney fees and other equitable relief – the same remedies available under Connecticut law.[4] 42 U.S.C. § 1981(a); 42 U.S.C. § 2000e-5. In this case, the CHRO made Plaintiff aware of her options and the remedies available to her. (56(a)1 Statement ¶ 6.) Plaintiff admitted that she was aware of the distinctions between the state and federal forums.[5] (Id. ¶ 7.)

### C. Plaintiff Chose To Litigate Her Claims Before The CHRO

Although Plaintiff could have pursued her claims in state court or federal court, she did not. (Id. ¶ 8.) Instead Plaintiff chose to litigate her discrimination claims at the CHRO. (Id. ¶ 9.) The CHRO practice and procedure affords only very limited discovery, namely only an exchange of documents. Conn. Regs. § 46a-54-89a (2003) (formerly Conn. Regs. §46a-54-72). No depositions are allowed, nor are parties afforded the opportunity for written discovery. Id. After years of delays, the CHRO held a public hearing on the discrimination claim in June 1998. (56(a)1 Statement ¶ 10) Over a year after the hearing ended, the part-time hearing officer issued a lengthy

---

that individual must wait 240 days before seeking the release. Id. By law, the EEOC must grant the request by issuing a "right to sue" letter which allows the individual to bring an action in federal court. Id.

[4] Plaintiff could also file her Title VII claim in state court. Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820 (1990).

[5] While Plaintiff had the option of pursuing her discrimination claim before the Superior Court or the CHRO, Pratt & Whitney -- as the respondent in the CHRO claim -- did not have any choice of the forum in which the case would be litigated. Conn. Gen. Stat. § 46a-101, Ex. D.

decision concluding that Plaintiff had been terminated by Pratt & Whitney on the basis of her gender. (Id. ¶ 11.) In doing so, the hearing officer adopted 117 of the CHRO's 119 proposed findings of fact (including typographical errors) and awarded Plaintiff back-pay and interest. (Id. ¶ 12.) Indeed, the parties had stipulated to the damages in the event that Pratt & Whitney was found liable for discrimination. (Id. ¶ 13.)

Pratt & Whitney appealed the decision to the Connecticut Superior Court. (Id. ¶ 14.) The Superior Court affirmed the CHRO decision on February 20, 2001. (Id. ¶ 15.) Pratt & Whitney also appealed to the Connecticut Appellate Court, which affirmed the Superior Court's decision on September 10, 2002. (Id. ¶ 16.) Each court affirmed the decision applying an "arbitrary and capricious" standard of review. Pratt & Whitney/United Technologies v. Commission on Human Rights and Opportunities, 2001 Conn. Super. LEXIS 514 (Conn. Super. Ct. Feb. 20, 2001); aff'd 27 Conn. App. 212 (2002)  Pratt & Whitney then paid Plaintiff the full amount of back pay damages and interest owed under the final judgment. (56(a)1 Statement ¶ 17.)

### D.  Plaintiff Brings the Same Discrimination Claim in Federal Court

On February 28, 2003, more than ten years after Plaintiff filed her complaint with the CHRO and EEOC, she brought the instant action in federal court alleging discrimination on the basis of her gender in violation of Title VII (the "Second Action"). (Id. ¶ 18.)[6] The Second Action is based upon exactly the same factual grounds as alleged in the First Action. (Id. ¶ 20.) A copy

---

[6] Plaintiff did receive a right to sue letter from the EEOC. (Id. ¶ 19.)

of the complaint in the Second Action is attached hereto as Exhibit B. Plaintiff now seeks only compensatory damages, punitive damages and attorneys fees in the Second Action, and does not seek back pay. (Id. ¶ 21.) The parties had the opportunity to conduct discovery and now Defendant, upon the close of discovery, is filing a Motion for Summary Judgment on the grounds that this action is barred by res judicata.

### III.   LEGAL ARGUMENT

#### A.   Legal Standard For Motion For Summary Judgment

Summary judgment should be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party. See Adickes v. S, H. Kress & Co., 398 U.S. 144, 158-59 (1970). A scintilla of evidence in support of the non-moving party's position, however, is not sufficient to prevent summary judgment; there must be evidence on which the jury reasonably could find for the plaintiff. See Anderson, 477 U.S. at 252. When dispositive motions are made on res judicata grounds, this same standard applies. See Centra Mortg. Holdings v. Mannix, 18 F. Supp. 2d 162, 163 (D. Conn. 1998) (granting summary judgment to defendants based upon res judicata).

### B. Plaintiff's Second Action is Barred by the Doctrine of Res Judicata

The CHRO's final judgment on the merits of Plaintiff's discrimination claim, reviewed and affirmed by the Connecticut Superior Court and Appellate Court, prevents Plaintiff from relitigating her discrimination claim in the Second Action. As far back as 1993 – nearly 11 years ago -- Plaintiff had the option to remove her discrimination claim to Connecticut Superior Court or to the United States District Court. Instead, Plaintiff decided to pursue her claim at the CHRO and has spent literally years litigating the matter before the state agency. Plaintiff's attempt to now re-litigate the same facts and issues is barred by the doctrine of res judicata.

#### 1. Federal Courts Must Give Res Judicata Effect to State Court Judgments

The Supreme Court has held that federal courts must give preclusive effect to a decision of a state court upholding a state administrative agency's finding when (1) the state court's decision would be given res judicata effect in the state's own courts, and (2) the agency and the state court proceedings meet the minimum due process requirements of the Fourteenth Amendment. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 463, 484-85 (1982); see also Bray v. New York Life Ins., 851 F.2d 60, 64 (2d Cir. 1988); Peavey v. Polytechnic Inst. of N.Y., 768 F. Supp. 35, 36 (E.D.N.Y. 1990). In so doing, the Supreme Court made clear that complainants pursuing claims at a state agency may lose the right to pursue similar actions in federal court. See Consolidated Foods Corp. v. Unger, 456 U.S. 1002, 1004 (1982) (Blackmun, J., concurring) ("Surely all future discrimination victims in respondent's situation should be very careful to avoid the state courts

entirely so that those victims will not risk losing the relief that Congress intended Title VII to afford them.")

Under Kremer, "a plaintiff [who] has entered the state court system [will be] bound by the preclusion rules governing that system, and the federal courts in turn must respect the finality of the judgments that issue from the state court." Bray, 851 F.2d at 64. The court in Bray held that federal courts should look to state law to determine if the dismissal should be entitled to preclusive effect under the doctrine of res judicata. Id.; Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 381-82; Bray, 851 F.2d at 64 (2d Cir. 1988); Centra Mortg. Holdings, 18 F. Supp. at 164 (applying Connecticut state law of res judicata).

The court in Kremer has explained that the doctrine of res judicata provides that a final judgment on the merits of the action precludes the parties from relitigating issues that were or could have been raised in that action. Kremer, 456 U.S. 461, n.6 (1982). Thus, a federal court is required to give a state court judgment the same preclusive effect that the judgment would receive from a state court in that jurisdiction. Kremer, 456 U.S. at 466; 28 U.S.C. § 1738. The Supreme Court has interpreted the "full faith and credit clause" of 28 U.S.C. § 1738 to mean that "a federal court [must] refer to the preclusion law of the State in which judgment was rendered." Marrese, 470 U.S. at 380 (1985). In other words, "[S]ection 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer, 456 U.S. at 466; see also Migra v. Warren

City School Dist. Bd. of Educ. 465 U.S. 75 (1984) (applying rule to issue preclusion and claim preclusion) Application of this rule relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and by preventing inconsistent decisions, encourages reliance on adjudication. Id. Therefore, this court must apply Connecticut law in determining the preclusive effect of the First Action.

### 2.    Connecticut law Bars Plaintiff's Attempt to Relitigate

Connecticut law prohibits Ms. Nestor's attempt to relitigate her claims. Under the doctrine of res judicata in Connecticut, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim.[7] Joe's Pizza v. Aetna Life and Cas. Co., 236 Conn. 863, 871-72 (1996). A judgment is final not only to every matter that was offered to sustain the claim, but <u>also as to any other matter which might have been offered for that purpose</u>. Fink v. Golenbock, 238 Conn. 183, 191 (1996) (*emphasis added*). "[Res judicata] applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first

---

[7] The underlying purposes of res judicata are: 1) to promote judicial economy by minimizing repetitive litigation; 2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and 3) to provide repose by preventing a person from being harassed by vexatious litigation. Fink v. Golenbock, 238 Conn. 183, 192 (1996). The doctrine is based upon the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 363 (1986).

action, or (2) [t]o seek remedies or forms of relief not demanded in the first action." Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 365 (1986) (*emphasis added*).

The Connecticut Supreme Court has adopted the "transactional test" as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. Fink, 238 Conn. at 191. The test has been defined as:

> The claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or a series of connected transactions, out of which the actions arose. What factual grouping constitutes a 'transaction' and what groupings constitute a 'series', are to be determined pragmatically giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Id. at 191-92. The determination as to whether two actions are part of the same 'transaction' requires a comparison of the complaint in this action with the pleadings and judgment in the earlier action. Joe's Pizza, 236 Conn. at 873.

Connecticut courts routinely apply res judicata in employment discrimination matters. Cabrera v. Dep't of Soc. Servs., No. X04CV0124541S, 2002 Conn. Super. LEXIS 2772 (Conn. Super. Ct. Aug. 19, 2002) (plaintiff's prior successful federal court action under Title VII bars later

-10-

discrimination action under the CFEPA)[8]; McCall v. City of Danbury, No. CV990334254S, 2001 Conn. Super. LEXIS 245 (Conn. Super. Ct. Jan. 11, 2001) (summary judgment dismissing federal court discrimination action has res judicata effect on later state court discrimination action); Jackson v. Aetna Life Ins. Co., No. CV8903643625, 1991 Conn. Super. LEXIS 1640 (Conn. Super. Ct. July 9, 1991) (prior discrimination action under Title VII precludes subsequent state contractual and common law claims). Moreover, federal courts routinely apply res judicata in the same way. E.g. Walker v. Envirotest Sys. Inc., 77 F. Supp. 2d 294 (D. Conn. 1999).

Applying Connecticut law's "transactional test," there can be no credible dispute that the claim made in the First Action that was affirmed by the Superior and Appellate Courts and those in

---

[8] Plaintiff's Second Action is factually similar to (although the reverse of) the situation before the court in Cabrera. In Cabrera, the plaintiff brought a successful employment discrimination claim in federal court under Title VII. After she recovered damages in the federal action, she brought a discrimination action in Connecticut Superior Court seeking, among other things, attorneys' fees under CFEPA. Plaintiff argued that she was unable to seek the full remedy (in this case attorneys fees under CFEPA) in federal court, and therefore her state court claim should not be precluded. The court dismissed the case based upon res judicata, noting that there was nothing that had prevented plaintiff from seeking federal and state law relief in the state courts.

Likewise, in this case, Plaintiff chose to bring her discrimination claim in a forum (the CHRO) in which she could not recover certain remedies (compensatory damages, punitive damages and attorneys fees). As in Cabrera, there was nothing that prevented Plaintiff from originally bringing claims in a forum (the state court or federal court) that would have offered the additional damages. Plaintiff received a final judgment from the CHRO that was affirmed by the Superior Court and Appellate Court in Connecticut. Under res judicata, this judgment bars Plaintiff's attempt to seek additional damages by relitigating her discrimination claim in federal court.

the Second Action are the same 'transaction.' They are not merely related, but are identical in time, space, origin and motivation. Both actions allege discrimination against Pratt & Whitney on the basis of gender and turn on the same series of events. Moreover, the complaint in the Second Action recites in detail the procedure of the First Action.

Plaintiff's search for additional remedies or forms of relief not awarded in the first action is insufficient under Connecticut law to defeat the preclusive effect of res judicata. As the Connecticut Supreme Court stated in <u>Duhaime</u>, "Plaintiff is seeking to relitigate a single claim under a new theory in order to obtain an additional remedy, and this he may not do." <u>Duhaime</u> at 366. Therefore, the Supreme Court's test in <u>Kremer</u> has been met; there is no doubt that Connecticut courts would bar further litigation on Plaintiff's discrimination claims.[9]

### 3. The Federal Enforcement Scheme of Title VII Does Not Exempt Plaintiff's Claim From Dismissal on Res Judicata Grounds

The First Action does not lose its preclusive effect on the Second Action claim because of the federal enforcement scheme of Title VII. It is anticipated that Plaintiff will argue that the United States Supreme Court decision in <u>New York Gaslight Club, Inc. v. Carey</u>, 447 U.S. 54

---

[9] The second part of the <u>Kremer</u> test – that the agency proceedings meet the minimum requirements of due process -- cannot seriously be in dispute. To meet this requirement, state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit established by federal law." <u>Kremer</u>, 456 U.S. at 481. Here, Nestor had a hearing before a part-time hearing officer with an opportunity to cross-examine witnesses. Therefore, the second part of <u>Kremer</u> has been met. <u>See</u> Ex. F.

(1980) and the unreported United States District Court opinion <u>Lewis v. Ames Department Stores, Inc.</u>, No. 3:97CV1214, 1999 WL 33116610 (D. Conn. Mar. 31, 1999) prohibit the application of res judicata to Plaintiff's claim. These decisions are not applicable.

In <u>Gaslight</u> (a case decided before <u>Kremer</u>), the Court held that Title VII authorized a federal court action to recover attorneys fees for work done by a prevailing complainant before New York's NYDHR agency and the New York state courts where such fees were not available at all under state law. In <u>Gaslight</u>, the NYDHR found in favor of the complainant on a race discrimination claim. Because New York law at the time did not authorize an award of attorneys fees for work done in either state administrative or judicial proceedings, 447 U.S. at 67 n.7, the plaintiff filed a Title VII action in federal court seeking only attorneys fees incurred in the state proceeding. The Supreme Court held that the plaintiff could proceed with her claim because attorneys' fees were not available at all under state law. The court stated that: "Initial resort to state and local remedies is mandated and recourse to federal forums is appropriate only when the State does not provide prompt or complete relief." <u>Id</u>. at 65.[10]

---

[10] Justice Stevens wrote a separate concurring opinion stating that it was doubtful that Congress intended to authorize a separate federal action solely to recover attorneys fees, incurred in obtaining administrative relief and theorized that such a question that was not before the court. Justice Stevens went on to conclude:

> A quite different question would be presented if, before any federal litigation were commenced, an aggrieved party had obtained complete relief in the administrative proceedings. It is by no means clear that the statute, which merely empowers a 'court' to

Gaslight is clearly distinguishable from this matter. In Gaslight, New York law did not allow individuals to recover attorneys' fees in state courts or administrative agencies. In stark contrast, Connecticut law allows for such a recovery. Indeed, Ms. Nestor had the right to seek attorneys' fees under Connecticut law. She needed only to request a withdrawal from the CHRO and file an action in Connecticut Superior Court. In a Superior Court action, she could, if successful, recover back pay, reinstatement, compensatory damages, punitive damages and attorneys fees; all the items of relief she is now seeking from her Second Action. As the Supreme Court recognized, there is simply no need to provide a right to sue in federal court for additional remedies when the state law provides these same remedies. "Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums." Gaslight, 447 U.S. at 67. Plaintiff's failure to seek additional remedies is created by her own choice, not by a state legislature's refusal to authorize complete remedies for discrimination under state law. Moreover, Plaintiff is seeking additional damages, such as punitive damages, that were not addressed by the court in Gaslight. Gaslight also did not address any res judicata arguments as it did later in Kremer.

---

> award fees, would authorize a fee allowance when there is no need for litigation in the federal court to resolve the merits of the underlying dispute.

447 U.S. at 72.

-14-

The Plaintiff is also expected to rely on Lewis. However, Lewis is also inapplicable here and should not be followed. In Lewis, an employee prevailed on her race discrimination claim before the CHRO and received reinstatement and back pay. The employee then brought a claim in federal court under Title VII seeking additional damages, including attorneys' fees. The employer filed a motion to dismiss on grounds that the court did not have jurisdiction in this matter and that the employee was not a "prevailing party" entitled to attorneys' fees. The District Court, in conclusory fashion, refused to dismiss the matter, citing Gaslight. It does not appear that the employer raised the defense of res judicata, nor did the court address that issue.

Lewis, if it is to be considered at all,[11] is distinguishable from the case at bar. First, it is an unreported decision addressing a motion to dismiss, not a motion for summary judgment. Second, the Court's summary opinion does not address res judicata and it does not appear that the issue was before the court. Therefore, any analysis by the court in Lewis is inapplicable here. Third, the Court appeared to believe that attorneys fees and compensatory damages were not available under Connecticut law (thus making the case factually similar to Gaslight), when that is clearly not the case. In short, the Lewis case is not helpful to an analysis of the facts. This court should not rely on this decision.

In short, the opinions in Gaslight and Lewis do not alter the fact that Plaintiff's Second Action is barred by res judicata.

---

[11] The Lewis decision has not been cited by any other court.

## IV. CONCLUSION

The Plaintiff is engaged in classic forum shopping – not in an effort to secure remedies, but in an effort to avoid full litigation of her claims in court. This is not permissible. The doctrine of res judicata must be applied to prevent the Plaintiff from relitigating her claims again. For all the foregoing reasons, this Court should grant the defendant's Motion for Summary Judgment.

DEFENDANT,
PRATT & WHITNEY,

By _____
Daniel A. Schwartz (ct15823)
Day, Berry & Howard LLP
CityPlace I, 185 Asylum Street
Hartford, CT 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
*daschwartz@dbh.com*
Its Attorneys

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed this Tuesday, March 02, 2004, via first class mail, postage prepaid, to:

Philip L. Steele
5 Linden Place
Hartford, CT 06106

_____
Daniel A. Schwartz