# EXHIBIT E

1

1       IN THE UNITED STATES DISTRICT COURT

         FOR THE DISTRICT OF CONNECTICUT

2

3

                          No. 3:03CV359 (AVC)

4

5  GALE NESTOR

6  VS

7  PRATT AND WHITNEY

8

9

10

11

12      Deposition of: GALE NESTOR, taken pursuant to

13  Rule 30 of the Federal Rules of Civil Procedure before

14  Barbara L. Murphy, Licensed Shorthand Reporter,

15  License No. 305 and Notary Public within and for the

16  State of Connecticut, held at the offices of Day,

17  Berry and Howard, CityPlace I, 185 Asylum Street,

18  Hartford, Connecticut on December 31, 2003 commencing

19  at 1:10 p.m.

20

21

22

23

24

25

18

1   A. Um-hm.
2   Q. You need to answer yes or no.
3   A. Yes, I'm sorry.
4   Q. The CHRO first investigated your claim of
5   discrimination, correct?
6   A. Yes.
7   Q. And then they found reasonable cause on that
8   investigation, correct?
9   A. Yes.
10  Q. Then it went to a public hearing?
11  A. Was it public?
12  Q. It went to a hearing whether in fact --
13  whether or not you realized it was a public hearing or
14  not, nevertheless you agree with me that we had a
15  hearing before a hearing officer?
16  A. We had a hearing of the commission.
17  Q. Correct. At that time did you understand
18  what damages were available to you if you stayed in
19  that forum?
20  A. I'm not quite sure I understand. What do
21  you mean by damages available?
22  Q. Well, did you understand that the hearing
23  officer could award you back pay for the time you were
24  not working?
25  A. From what I understood that that was the

19

1   thing that they were going after, back pay. That's
2   what concerned me.
3   Q. Did you understand that if you remained at
4   that forum, going with public hearing, that you were
5   not going to be able to recover items such as
6   compensatory damages?
7   A. This is where the people at the commission
8   made it clear to me that they were not representing my
9   own personal interests but the law.
10  Q. And how did they make that clear to you?
11  A. By telling me that I should go out and get a
12  lawyer to represent me for my own interests.
13  Q. Once that happened at any point in time
14  before the hearing did you understand that the hearing
15  officer was not going to be able to award you
16  compensatory damages if you remained there?
17  A. Yes. The CHRO had told me -- I don't
18  remember who it was but the only thing that would be
19  awarded would be the time to work, the six months.
20  Q. So you knew that other things that you could
21  claim you were not going to able to recover if you
22  stayed at the CHRO?
23  A. I was told by them my own interests, damages
24  for what Pratt and Whitney has perpetrated on me would
25  not be covered by the CHRO and for my own best

20

1   interests that I should go out and retain an attorney.
2   Q. But even -- you retained an attorney in this
3   case?
4   A. Yes. After they directed me to do that I
5   did go out and get an attorney.
6   Q. Nevertheless even after you retained an
7   attorney you stayed at the CHRO forum?
8   A. Yes.
9   Q. You didn't bring the claim in state court,
10  did you?
11  A. Because the CHRO was representing me. And
12  they were doing a good job.
13  Q. Even after Attorney Steele -- you retained
14  Attorney Steele?
15  A. He was there to look out after my interests
16  and the CHRO was out to look after the law's interests
17  in the state of Connecticut that Pratt and Whitney
18  doesn't violate it.
19  Q. And did you understand that certain types of
20  damages that you might be eligible for were not going
21  to be able to recover at the CHRO?
22  A. As I told you --
23      MR. STEELE: Excuse me, Dan, I want to
24  put an objection on the record.
25      MR. SCHWARTZ: You can state objection

21

1   and that's it. I don't want any speaking objection.
2   We have a short amount of time. Your objections --
3   all objections except as to the form are preserved.
4   So if you have an objection to the form of the
5   question, just state objection; otherwise, it's going
6   to be interrupting --
7       MR. STEELE: I will be very brief. I
8   want to let you know that I think these questions
9   really call for legal conclusions and are not even
10  appropriate to be asking her. Okay.
11      MR. SCHWARTZ: Your objection is noted.
12      MR. STEELE: Thanks.
13      MR. SCHWARTZ: Let me repeat the last
14  question.
15  Q. (By Mr. Schwartz) Did you understand before
16  the hearing that took place in this case that the
17  hearing officer was not going to be able to award you
18  all the damages that you were otherwise eligible for?
19  A. As I said before, they made it clear to me
20  that the CHRO was representing the laws of the state
21  of Connecticut that Pratt and Whitney -- that they
22  were representing me because they felt that Pratt and
23  Whitney was in violation of those laws and that my own
24  personal interests in the case should be represented
25  by an attorney.

74

1      THE WITNESS: Thank you. You cannot
2  put me back whole. No court can put me back whole.
3  You can't remove what I've suffered. Okay.
4      So I mean you're talking about
5  something that really can't -- so if you want to put
6  it into numbers, at that time I put it into numbers
7  but okay, I would give you all that money back, I
8  wouldn't take a dime if you could put me back the way
9  I was before all this went down.
10     Q. (By Mr. Schwartz) I want to refer you back
11  to paragraph 25 and maybe we'll have some better luck
12  this way.
13     You're seeking in your lawsuit all
14  remedies available to you under federal law which have
15  not been awarded to you under state law.
16     Can we agree that's what you're seeking?
17     A. Yes.
18     Q. Part of that is compensatory damages which
19  you claim you were not able to receive at state -- at
20  the CHRO, correct?
21     A. Yes.
22     Q. Did you know that you could seek
23  compensatory damages in state court? Were you aware
24  of that?
25     A. The CHRO sent me a letter something like

75

1  that. I think that's customary of them to send a
2  letter that you can bring that to state court.
3     Q. Meaning you could get compensatory damages
4  in state court?
5     A. At that time -- I'm not even sure I know it
6  now but I do know you can take -- both court you can
7  either go through an agency like the CHRO or you can
8  just flat out take a person to court and do it.
9     I believe -- I would find it surprising
10  that anything would stop you from taking them but like
11  I says, my choice was to stay with the commission.
12     And when they explained to me then, that
13  they were not looking out after my personal interests
14  and directed me to -- so that all remedies available
15  which I didn't know what this extent of these remedies
16  were, for my own best interest is to get a lawyer and
17  I went out and got a lawyer.
18     Q. And you did?
19     A. Yes.
20     Q. And you had a lawyer representing you for
21  over a year before the actual hearing took place,
22  isn't that true?
23     A. What hearing are you talking about?
24     Q. The hearing that was at the CHRO?
25     A. Yes. He was there to represent my interests

76

1  and Attorney Simonelli (sic) was there to represent
2  the state of Connecticut, the commission, the CHRO's
3  interests and what Pratt and Whitney was doing when it
4  violated the law.
5     Q. Now, the compensatory damages in paragraph
6  25 that you're seeking.
7     A. Yes.
8     Q. These relate to the physical, mental and
9  spiritual distress that you claim to have suffered?
10     A. Financial, physical, mental and spiritual
11  damages.
12     Q. All right. What financial damages do you
13  claim to have suffered?
14     A. Okay. So for what is it, the sixth time, I
15  repeat to you. The amount at the time in the fall of
16  -- what is it, 2002 approximately? Prior to this in
17  February 2003 the amount was one thousand -- $165,000.
18  Since then it's changed I would imagine.
19     Q. Have you suffered any out-of-pocket losses
20  that you're seeking to recover in this lawsuit?
21     A. Yes. Financial problems, financial damages,
22  yes.
23     Q. What are those out-of-pocket losses?
24  Categorize them. Not the amounts but what types of
25  categories are we talking about that you claim to have

77

1  suffered as a result of the discrimination, the
2  termination in 1992?
3     A. Well, if I hadn't experienced the
4  discrimination and the termination resulting from that
5  and the further discrimination after my reinstatement,
6  I would not have been laid off. I would have been a
7  labor grade 1.
8     I would have been -- I should have been
9  except for the discrimination a labor grade 1 which
10  would have kept me out of the layoff. So the time I
11  was out during the layoff, the time that I was
12  employed in other places not making the same amount of
13  wages.
14     All of the wages that I've paid Mr.
15  Steele and also, you know, in the end when I believe
16  that the court will probably find in my behalf, that I
17  should be compensated. Then I would expect that Mr.
18  Steele would be paid in full for everything.
19     Q. But are you aware -- you're not seeking
20  wages, back wages or anything in this lawsuit?
21     A. I'm talking financial damages that I've
22  suffered as a direct result of the harassment and
23  discrimination and termination that I experienced in
24  1992, my termination.
25     Q. Right but that was --