UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GALE NESTOR** | : No. 3:03CV359(AVC) |
| v. | : |
| **PRATT & WHITNEY** | : March 26, 2004 |

PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO SUMMARY JUDGMENT

## I. INTRODUCTION

Defendant's argument that this action is barred by the doctrine of res judicata misrepresents and misconstrues both the procedural background and the applicable law and attempts to rewrite both federal and state law. Defendant ignores the clear fact that Plaintiff has pursued a single course in following the statutory scheme to redress discrimination set forth by Title VII. Its attempt to penalize Plaintiff for exhausting administrative remedies required by Title VII should be rejected.

## II. BACKGROUND OF THE CASE

### A. Title VII Actions In Federal Court Require An Administrative Course.

Title VII requires that any federal claim of employment discrimination be filed first with the state agency in the state where the violation occurred. Sec. 2000e-5(c). It is undisputed that Plaintiff filed such a charge with the Connecticut CHRO on November 5, 1992. Said charge was deemed simultaneously filed with the EEOC, which, in accordance with federal law, deferred action to the CHRO while assuming concurrent jurisdiction over the complaint. A Title VII claim becomes active only at the end of the deferral period, when the EEOC is required to act. Sec. 2000e-5(f)(1). Under this statutory scheme, while

initial resort to state administrative remedies is mandated, recourse to federal court becomes available to a claimant who requests the right to sue.

### B. **Plaintiff Has Exhausted Her Remedies In The Administrative Stage Of This Matter.**

Plaintiff pursued her administrative claim with the deferral agency and, following a hearing in 1998, was awarded back pay. As Defendant concedes, the CHRO had no authority to grant further relief permitted by federal law. Title VII expressly allows the EEOC to grant a claimant the right to sue in federal court when administrative proceedings have not provided full relief. Sec. 2000e-5(f)(1). Because it recognized that the states might not be effective in rectifying employment discrimination, Congress determined to allow claimants resort to a federal remedy. *Holt v. Continental Group*, 631 F.Supp. 653 (D.Conn. 1985), aff'd 788 F.2d 3 (2d Cir. 1986). It is well settled that supplemental relief may be awarded in federal court actions to plaintiffs who initiated their discrimination claims with state agencies. *Unger v. Consolidated Foods Corp.*, 657 F.2d 909 (7th Cir. 1981) (Title VII fees for representation before FEP agency); *Batiste v. Furnco Construction Corp.*, 503 F.2d 447 (7th Cir. 1974) (Title VII action to obtain backpay); *Mammano v. The Pittston Co.*, 792 F.2d 1242 (4th Cir. 1986) (Title VII fees awarded for EEOC representation); *Curtis v. Bill Hanna Ford*, 822 F.2d 549 (5th Cir. 1987) (same); *Jones v. American State Bank*, 857 F.2d 494 (8th Cir. 1988) (Title VII fees for representation before FEP agency); *Lenihan v. City Of New York*, 636 F.Supp. 998 (S.D.N.Y. 1986) (same); *Maszk v. Alumatic Corp. Of America*, 567 F.Supp. 1481 (E.D.Wis. 1983) (same); *EEOC v. Nutri/System*, 685 F.Supp. 568 (E.D.Va. 1988) (same); *Denny v. Westfield State College*, 50 FEP Cases 699 (D.Mass. 1988), aff'd 880 F.2d

1465 (1st Cir. 1989) (same); *Whalen v. Unit Rig Inc.*, 974 F.2d 1248 (10th Cir. 1992) (ADEA fee award for time spent at administrative level); *Bleakley v. Jekyll Island Authority*, 536 F.Supp. 236 (S.D.Ga. 1982) (same); *Tennes v. Commonwealth of Mass.*, 53 FEP Cases 36 (N.D.Ill. 1990) (Title VII fee award including for time spent at administrative level); *Skinner v. EEOC*, 551 F.Supp. 333 (W.D.Mo. 1982) (Title VII fees may be awarded to a prevailing party at administrative level); *Porter v. District of Columbia*, 502 F.Supp. 271 (D.D.C. 1980), reversed and remanded on other grounds, 673 F.2d 552 (D.C. Cir. 1982) (Title VII fee award for time spent at administrative level); *Lewis v. Ames Dept. Stores, Inc.*, No. 3:97CV1214, 1999 WL 33116610 (D.Conn. Mar. 31, 1999) (Title VII fees, compensatory and punitive damages allowed because not available from CHRO).

## III. DEFENDANT'S ARGUMENT

### A. Plaintiff Did Not Have A Choice Whether To Bring Her CHRO Claim.

Defendant's claim that "Plaintiff *chose* to litigate her claims before the CHRO," notwithstanding (emphasis added), the relevant statutory scheme compelled Plaintiff first to file a complaint with the appropriate state administrative agency before the federal action could be commenced. As such, whether to file an administrative complaint was not an option for the Plaintiff and, thus, was not within her control.

After the CHRO took claimant's charge to a hearing that awarded her damages for back pay in 1998, Plaintiff was prepared to request a right to sue from the EEOC so that she could seek in federal court the remedies of compensatory and punitive damages and attorney's fees not available to her before the agency. That is, Plaintiff was prepared to initiate an "action." Under the statutory scheme, no federal claim could be active until the

state proceeding was complete, concluding the deferral period. Defendant, however, appealed the hearing officer's decision to the Connecticut Superior Court. Although the court ruled against Defendant (Cohn, J.), Plaintiff was still unable to seek a right to sue because Defendant appealed again. When the Connecticut Appellate Court upheld the lower court and dismissed Defendant's appeal, Plaintiff was still unable to seek further remedies in federal court. Defendant asked the Connecticut Supreme Court to review the case. The Supreme Court declined, Plaintiff was finally able to obtain her right to sue from the EEOC, and this action followed, bringing Plaintiff into federal court, where "final responsibility for enforcement of Title VII is vested." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974), *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982).

### B. Congress Encourages Claimants To Exhaust Administrative Remedies Before Filing Their Federal Court Action.

Plaintiff's administrative course was a "prerequisite" to the present action, *Reichman v. Bonsignore, Brignati*, 818 F.2d 278 (2d Cir. 1987) (ADEA), but Defendant would now characterize it as her "first action" even though it occurred entirely within the deferral period established by federal law. It argues (p. 1) that she seeks damages that she "could" have sought under Connecticut law "but did not seek in her first claim" and that such an "attempt to relitigate" is barred by res judicata.

Defendant assumes that because Plaintiff *could* have obtained a release from the CHRO and pursued her claims in federal court, she *should* have done so. Defendant thus mischaracterizes C.G.S. §46a-100 and C.G.S. §46a-101. These statutes provide complainants with an alternative option. They do not require the alternative course. The state administrative proceedings, in contrast, are required by Title VII, and it encourages

4

their exhaustion. The state procedures are "a meaningful part of the Title VII enforcement scheme," *N. Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65 (1980), not the exclusive part, and only administrative procedures are required.

Indeed, Defendant makes no claim that either state or federal law in any way required Plaintiff to withdraw her claim from the CHRO and instead find a way to finance a trial on the merits of her extensive factual claims in Superior Court. Even a cursory review of the CHRO Hearing Officer's decision (attached to Defendant's Local Rule 56(a)1 statement) makes it clear that a court or jury trial of the central issues of discriminatory employment practices would have been tremendously time-consuming and complex for Plaintiff. Counsel for the CHRO clearly would not have been available to help Plaintiff and her attorney in court. Jumping from the CHRO to Superior Court to establish discriminatory employment practices would have required Plaintiff to negotiate an unaffordable fee arrangement with her attorney. Instead of paying counsel $200 a month toward the legal fees required to assist her and the CHRO in the public hearing at the CHRO, Plaintiff would have had to pay her counsel in the neighborhood of $1,000 a month. That she could not do. See Plaintiff's Affidavit.

Concern for a complainant's ability to engage private counsel is central in Title VII. "It is clear that one of Congress' primary purposes in enacting the section [permitting an award of attorney's fees] was to 'make it easier for a plaintiff of limited means to bring a meritorious suit.'" *N.Y. Gaslight Club v. Carey*, 447 U.S. 54, 63 (1980). "It is well recognized that the attorney fees provisions are to be liberally applied because the private 'plaintiff is the chosen instrument of Congress to vindicate a "policy that Congress

5

considered of the highest priority.'" *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 US. 400, 402 (1968)." *Miller v. Staats*, 706 F.2d 336 (D.C. Cir. 1983). Only the award of supplemental relief "ensures incorporation of state procedures as a meaningful part of the... enforcement scheme." *Gaslight*, at 65.

Had Plaintiff lost her case before the CHRO, then gone to federal court and won, she would be entitled to full relief, including attorney's fees incurred in the unsuccessful agency proceeding. See e.g. *Univ. of Tennessee v. Elliott*, 478 U.S. 781 (1986). Having won her case before the CHRO surely should entitle her to no less relief in this forum.

Abandoning the procedure set forth by Title VII and launching an action in state court would also have lost Ms. Nestor all advice and counsel of the agency charged with enforcing employment discrimination law. Defendant has pointed to no legislative intent, state or federal, to require such a course on the part of the victims of discrimination. Indeed, the case law and legislative history point to the opposite course. Defendant's scheme would force complainants "to bear the costs of mandatory state and local proceedings and thereby would inhibit the enforcement of a meritorious discrimination claim." *N.Y. Gaslight Club v. Carey*, 447 U.S. 54, 63 (1980).

C. **Neither Title VII Nor Connecticut Law Require A Title VII Claimant To File Her Federal Action Before Exhausting Administrative Remedies, To Abandon The Administrative Process And File In State Court, Or To File An Action In State Rather Than Federal Court**.

Nor was Plaintiff required by state or federal law to abandon the CHRO and go into either state or federal court with her claims. C.G.S. §46a-101 states that the complainant "may request a release" and §46a-100 says she "may also bring an action in the superior

6

court." These optional provisions are not mandatory and a claimant's right to have the CHRO pursue a charge of employment discrimination on her behalf is preserved. Just as "no provision of Title VII requires claimants to pursue in state court an unfavorable state administrative decision," Kremer v. Chem. Constr. Corp., 456 U.S. 461, 469 (1982), it is clear that no provision of Title VII requires claimants to pursue a state court remedy in lieu of the administrative proceedings and the scheme contemplated by Title VII. Defendant has demonstrated no Congressional intent to require plaintiffs to file state court actions in pursuit of Title VII relief, and it would be anomalous to impose such a requirement without a showing of Congressional intent.

Reading Title VII to require a complainant to obtain an agency release and file a state court lawsuit would stand the statutory scheme on its head and undermine its very purpose. Had Congress wanted to force complainants into court, it could have done so even before the enactment of Conn. Gen. Stats. §§ 46a-100-101. A combination of an agency process and resort to the courts was built into Title VII, with the clear intent of utilizing both administrative and judicial tools to combat discrimination. Had Congress had the intent Defendant now claims should be read into Title VII, the statute could simply have directed complainants to court initially, bypassing any administrative avenue.

Defendant also ignores the scope of both the release and the action contemplated by the Connecticut statutes. C.G.S. §46a-101 states that the complainant "may request a release" *from the CHRO* and §46a-100 says she "may also bring an action in the superior court" but §46a-101 does not address a release from the EEOC and §46a-100 does not state that a complainant may bring her federal claim in state court. Indeed, while a Title

VII complainant who is successful in a state agency may seek supplemental relief in federal court, a complainant who enters state court is not entitled to such federal relief. *Paz v. Long Island Railroad Co.*, 954 F.Supp. 62 (E.D.N.Y 1997).

Moreover, Defendant's assertion (p. 3) that C.G.S. §46a-104 allows the Superior Court to award "back pay, reinstatement, compensatory damages, punitive damages, attorney fees and other equitable relief" is inaccurate. The statute empowers the court to grant "such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." Attorney's fees are clearly available, but how is any plaintiff to know whether a judge would find back pay, compensatory damages and punitive damages permissible under the statute, let alone appropriate in a given case? Unlike Title VII, which specifies compensatory and punitive damages, C.G.S. §46a-104 is not clear and there was not in 1992 any judicial clarification of the legislative intent. Section 46a-104, furthermore, fails to indicate whether attorney's fees are available for work done at the administrative level.

### D. <u>Defendant's Reliance On *Kremer v. Chem. Constr. Corp.* Is Misplaced</u>.

Defendant's reliance on *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982) is entirely without merit. Defendant ignores its clear holding that the principle of res judicata means that the "merits of a legal claim once decided in a *court* of competent jurisdiction are not subject to redetermination in another forum." *Kremer* at 484 (emphasis added). "A judgment in one *suit* is res judicata in another where the parties and subject-matter are the same...as respects any other available matter which might have been presented to that end." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (emphasis added).

Defendant's appeal of the administrative determination does not equal a *suit*, and not one by Plaintiff, nor one in which the issues brought in the instant suit could have been presented. When a plaintiff "could not have presented" the claims in the prior proceeding, there is no res judicata effect. *Long v. Frank*, 808 F.Supp. 961, 965 (E.D.N.Y. 1992).

*Kremer* applied 28 U.S.C. §1738 and the doctrine of res judicata to a Title VII action after an *employee* appealed a state agency decision. Kremer had *lost* a state appeal of an unfavorable administrative finding and expressly sought to relitigate precisely the same issue of whether a discriminatory practice had occurred. The Court made it clear that it reads Title VII as permitting a plaintiff who had *won* an administrative hearing to then proceed to federal court.

> Congress enacted Title VII to assure equality of employment opportunities …To this end the EEOC was created and the federal courts were entrusted with ultimate enforcement responsibility. State anti-discrimination laws, however, play an integral role in the Congressional scheme…Only after providing the appropriate state agency an opportunity to resolve the complaint may an aggrieved individual press his complaint before the EEOC…

456 U.S. at 471. Had Plaintiff lost her case before the CHRO, then gone to federal court and won, she would be entitled to full relief, including attorney's fees incurred in the unsuccessful agency proceeding. See e.g. *Univ. of Tennessee v. Elliott*, 478 U.S. 781 (1986). Having won her case before the CHRO surely should entitle her to no less relief in this forum. "In those situations where the complainant prevails on his claim of discrimination before the state administrative agency, he may be entitled to bring a subsequent Title VII suit in Federal court to supplement his state remedies." *Buckhalter v. Pepsi-Cola General Bottlers*, 768 F.2d 842 (7th Cir. 1985).

9

*Kremer* goes on to say that no provision of Title VII requires claimants to pursue in state court an unfavorable state administrative decision, and noted the important distinction between a claimant's proceedings before an FEP agency and a claimant pursuing remedies in state court. "While we have interpreted the 'civil action' authorized to follow consideration by federal and state administrative *agencies* to be a 'trial de novo'...neither the statute nor our decisions indicate that the final judgment of a state *court* is subject to redetermination at such a trial." Id. (citations omitted) (emphasis in original). Defendant's vague claim (p. 7) that the Supreme Court "made clear that complainants pursuing claims at a state agency may lose the right to pursue similar actions in federal court" distorts both *Kremer* and Justice Blackmun's concurrence in *Consolidated Foods Corp. v. Unger*, 456 U.S. 1002, 1004 (1982). Justice Blackmun pointed out that discrimination victims need be very careful to avoid state *courts*, not state *agencies*, which they are required to utilize.

In addition, the *Kremer* Court reasoned:

> Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review *even if such a decision were to be afforded preclusive effect in a State's own courts*.

456 U.S. 470 n.7 (emphasis added).[1] In holding that the doctrine of preclusion will not apply to Title VII issues that have never been reviewed by state courts, *Kremer* also casts serious doubt whether the doctrine of res judicata should apply to Title VII claims that have

---

[1] Four years after *Kremer* the Court elevated this footnote to a holding, in *University of Tennessee v. Elliott*, 478 U.S. 788 (1986). See also *Astoria Federal S&L Assn. v. Solimino*, 501 U.S. 104 (1991) (ADEA provisions assume possibility of federal consideration after state agencies have finished); *McInnes v. State of California*, 943 F.2d 1088 (9th Cir. 1991) (no §1738 preclusion in Title VII context).

never been reviewed by state courts. Just as 28 U.S.C. §1738 does not apply to unreviewed agency determinations, regardless of state law, it would be anomalous to apply it to issues or claims which could not have been raised in the proceedings reviewed in state court. This is a statutory scheme which incorporates the doctrine of res judicata to prevent "relitigation of the *same* issues in a different forum." *Kremer*, at 475, citing remarks of Senator Javits, 118 Cong. Rec. 3370 (1972) (emphasis added).

*Kremer* tells us that in vesting "final responsibility" for Title VII enforcement in the federal courts, Congress did not mean to deny finality to decisions in another forum, a principle which is entirely consistent with and supportive of plaintiff's claims here. *Kremer* does not say that the granting of supplemental remedies in federal court would constitute such a denial of finality. Plaintiff does not challenge the finality of the CHRO's decision but seeks rather a decision on supplemental claims and issues which were not raised before the CHRO and, as Defendant concedes, which she could not have raised either before the CHRO or in Defendant's state appeal.

The holding of *Kremer* is, in effect, that plaintiffs who go to state court have to take the good with the bad. They cannot expect to have federal courts give effect to judgments in their favor but not judgments against them. That reasoning necessarily includes the principle that plaintiffs who win in state court are not precluded from seeking additional relief in federal court.[2] Plaintiffs are precluded from going to federal court, however, when they lose in state court. Otherwise, "[t]he state courts would be placed on a one-way

---

[2] See also *Astoria Federal S&L Assn. v. Solimino*, 501 U.S. 104, 112 (1991) (successful ADEA complainant may bring subsequent federal action "when state remedy, or its enforcement, is thought to be inadequate.")

street; the finality of their decisions would depend on which side prevailed in a given case." Id. It is only "full litigation of a single claim in both state and federal forums" that the principle of res judicata must be applied to prevent. Id. at. It is where a plaintiff would inevitably call the same witnesses and present exactly the same evidence that the policy behind res judicata was intended to apply.

Defendant thus ignores the fact that *Kremer* applies only to a plaintiff who "has entered the state court system," not to a plaintiff who defended, successfully, an appeal of a favorable agency determination, *Bray v. New York Life Ins.*, 851 F.2d 60, 64 (2d Cir. 1988), and only to the preclusion of issues that were or could have been raised in a prior action.[3] The only prior action here is Defendant's own appeal, one in which Plaintiff had no more right to seek compensatory and punitive damages or attorney's fees than she had before the CHRO.

Thus, it is the Plaintiff here, not the Defendant, who benefits from the principle of res judicata that the "merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum." *Kremer* at 484.[4] It is Defendant that seeks to ignore the merits of the CHRO decision as upheld by the Connecticut courts and to redetermine whether a finding of employment discrimination allows remedies in addition to backpay in the federal/state enforcement system. The

---

[3] As Justice Blackmun's dissenting opinion noted, "The Court, as it must, concedes that a state agency determination does not preclude a trial de novo in federal district court. Ante, at 7-9 and 8, n7. Congress made it clear beyond doubt that state agency findings would not prevent the Title VII complainant from filing suit in federal court." 456 U.S. at 487.

[4] "It is well established that judicial affirmance of an administrative determination is entitled to preclusive effect." *Kremer*, fn. 21, citing *CIBA Corp. v. Weinberger*, 412 U.S. 640, 644 (1973).

statutory scheme clearly permits the victim of employment discrimination to be made whole. Such is the plain intent of Congress. Defendant's strained attempt to twist a procedural device in order to redetermine the relief permitted by Title VII should be rejected.

### E. Res Judicata Does Not Bar Plaintiff's One and Only Action.

In *Patzer v. Bd. of Regents*, 763 F.2d 851 (7th Cir. 1985), the plaintiff had obtained administrative relief before the Department of Industry, Labor and Human Relations (DILHR) which was affirmed on appeal to state court. When Patzer filed suit in federal court for supplemental Title VII relief, the District Court, relying on *Kremer*, granted defendant's motion for summary judgment on grounds that the principle of res judicata barred the suit. The Seventh Circuit had to determine whether, under *Kremer* and §1738, Wisconsin would treat the judgment affirming the administrative decision as a bar to a later Title VII suit for supplemental relief. The court found that the Wisconsin law of res judicata ordinarily would bar an individual from maintaining a Title VII action for additional relief following a state-court judgment affirming an administrative decision in his favor. It held, however, that Wisconsin would make an exception for a Title VII action seeking supplementary remedies that were not available in the state proceeding.

The court noted that Title VII "embodies a deliberate policy of giving state agencies the first opportunity to resolve complaints of discrimination." Id. at 855. "Consistently with this policy of referral and deferral to state agencies, proceedings under Title VII have been characterized as supplementary to available state remedies for employment

13

discrimination.[5] *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65 (1980); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974)." Id. "In general," the court found, "res judicata does not operate to bar matters that were not raised before the administrative agency and over which it did not have jurisdiction. E.g., *McKee v. County of Ramsey*, 310 Minn. 192, 245 N.W.2d 460, 462 (1976)." Id. The court explained,

> In general, a judgment affirming an administrative decision is res judicata as to the claims adjudicated, no less than a judgment entered after a trial on the merits. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480 n.21 (1982). But to treat a judgment affirming a decision of DILHR in favor of the complainant as a bar to a Title VII action based on the same facts would frustrate the supplementary purpose of Title VII as surely as treating the administrative decision itself as a bar. In addition, it would create the following anomaly: a complainant who prevailed before DILHR without suffering an appeal to state court would be entitled to seek supplementary Title VII remedies in state court, but one who prevailed before DILHR and prevailed again on appeal in state court could not. We think it would appear to the Wisconsin Supreme Court wholly arbitrary to treat the state court affirmance of an administrative decision favorable to the complainant as an absolute bar to his cause of action under Title VII, when a similarly situated complainant whose case was not submitted to state court review by the losing respondent is free to litigate his claim.
>   The doctrine of res judicata was developed judicially to prevent the oppression of defendants and the burdening of the courts with multiple lawsuits by the same plaintiff based on the same set of facts. These are important considerations. But we are convinced that the Supreme Court of Wisconsin would find them to be overridden in the narrow circumstances of this case. While even an adjudged wrongdoer has a right to eventual repose, it is national policy that Title VII remedies be available to supplement state remedies for employment discrimination. We do not believe that the Supreme Court of Wisconsin would deny effect to that policy because of the fortuity that the wrongdoer took an appeal and lost a second time.

---

[5] See *State Division of Human Rights v. County of Monroe*, 88 Misc.2d 16, 20, 386 N.Y.S.2d 317, 321 (1976) ("neither res judicata nor collateral estoppel applies" because "dual or overlapping remedies were contemplated and expressly intended by Congress in Title VII").

Id. at 856-857. See also: *Antonsen v. Ward*, 943 F.2d 198 (2d Cir. 1991) (operation of broad bar of res judicata under New York law limited to situations where initial forum had power to award full measure of relief sought in later litigation).

The Catch-22 nature of Defendant's argument is patently absurd. If the mere option of filing an action in state court could bar a Title VII action in federal court on grounds of res judicata, then res judicata would have provided a similar defense to such a state court action on grounds that Plaintiff had already filed her "action" with the EEOC and had the option of seeking full remedies by filing in federal court.

Defendant's reliance on three Connecticut Superior Court cases, *Cabrera v. Dep't of Soc. Servs.*, 2002 Conn.Super. LEXIS 2772 (Aug. 19, 2002), *McCall v. City of Danbury*, 2001 Conn.Super. LEXIS 245 (Jan. 11, 2001) and *Jackson v. Aetna Life Ins. Co.*, 1991 Conn.Super. LEXIS 1640 (July 9, 1991) is misplaced. *Cabrera*, the only one of the three cases Defendant discusses at all, albeit in a footnote, is unclear why the plaintiff had been unable to adjudicate entitlement to attorney's fees in federal court. In fact, it appears that all of the plaintiff's underlying claims were litigated in the prior action, a court action, not simply an administrative one. Finally, it notes that the principles of claim preclusion and issue preclusion can apply only where a matter has been "fully" litigated. *McCall* likewise found that plaintiff already had the opportunity to fully litigate his claims in the action he had previously brought in federal court. In *Jackson* the plaintiff acknowledged that she could have included the claims of her second suit in her first. In none of these cases was there any claim or suggestion that a plaintiff may be obligated to forsake the administrative remedy prescribed by Title VII and finance an independent lawsuit in state court.

Defendant undermines its central claim that Plaintiff has already had the opportunity to "fully litigate" her claim when it concludes (p. 16) by claiming that she is trying "to avoid full litigation of her claims" by engaging "in classic forum shopping."

### F. **Defendant Fails To Address *N.Y. Gaslight Club v. Carey*.**

Defendant misrepresents the holding of *N.Y. Gaslight Club v. Carey*, 447 U.S. 54 (1980), arguing, at p. 13, "The Supreme Court held that the plaintiff could proceed with her claim *because* attorneys' fees were *not available at all* under state law." (Emphasis added.) *Gaslight* contains no such holding.[6] In contrast to Defendant's claim, the Court stated, "In sum we conclude that §§706(f) and 706(k) of Title VII authorize a federal court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII." Indeed, the passage from *Gaslight* quoted by Defendant in alleged support of its assertion states a proposition that supports the Plaintiff's claim, that discrimination victims are required to resort first to state remedies and should turn to federal forums if the those required remedies do not provide full relief. (Both Title VII and *Gaslight*, it should be noted, predate the state remedy Defendant seems to claim Title VII would additionally require, C.G.S. §46a-100.) *Gaslight* states that supplemental relief is available in federal court "if satisfactory relief *is not obtained* in state forums." 447 U.S. at 67 (emphasis added). It

---

[6] Defendant relies (n.10) on Justice Stevens' concurring opinion in *Gaslight* doubting that Title VII "would authorize a fee allowance when there is no need for litigation in the federal court to resolve the merits of the underlying dispute." Even if the Court here did not need to resolve Plaintiff's claims for compensatory and punitive damages, Justice Stevens' opinion is unavailing to Defendant as it was squarely rejected by the majority, at 66 & n.6., and therefore cannot be used to limit *Gaslight*.

does not say that such right is available only if satisfactory relief *cannot* be obtained in *a state forum other than* the agency Title VII requires a plaintiff to pursue.

Defendant cannot claim that supplemental Title VII remedies in federal court will in any way undermine "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). The remedies Plaintiff seeks fulfill Congressional intent and support the relief awarded at the CHRO, thus promoting comity. They conflict neither with the state administrative proceedings nor the appellate validation of them.

### G. Plaintiff's Federal Action Promotes Comity, Conserves Judicial Resources And Those Of The Parties And Cannot Lead To An Inconsistent Decision.

Defendant concedes, as it must, that the doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources by minimizing repetitive litigation and to prevent inconsistent decisions. *Fink v. Golenbock*, 238 Conn. 183, 192 1996). These are the same ends Congress incorporated in Title VII's statutory scheme. "Title VII, including the creation of the EEOC, reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Chris v. Tenet*, 221 F.3d 648 (4th Cir. 2000).

Defendant fails to demonstrate, however, that any of these ends have been undermined because Plaintiff did not abandon the administrative process dictated and encouraged by Title VII in order to litigate her claims in the Connecticut courts. Far from Plaintiff vexing Defendant with litigation, it is only Defendant in its meritless state appeals of the administrative proceedings that has engaged in vexatious litigation and delay.

17

Plaintiff's legal route has been the quicker, less formal, less expensive, and less burdensome one favored by Title VII. *West v. Gibson*, 527 U.S. 212 (1999). Her course has involved no repetitive litigation at all and risks no inconsistent decisions. The course of litigation Defendant suggests would have created the same number of lawsuits, and not only at far greater cost to the Plaintiff but likely at greater cost to Defendant as well. Judicial resources would have been taxed to a far greater degree since all of the factfinding, not to mention discovery and motion practice, would have had to be conducted in court in its more time-consuming and expensive fashion.[7]

Indeed, this one and only action Plaintiff has filed is an exemplary refutation of Defendant's arguments. The parties virtually completed discovery in this case in a single day with a two-hour deposition of the Plaintiff. Neither side has named any expert witnesses and the only evidentiary issue that needs to be determined is the extent of the emotional distress suffered by Plaintiff. She has thus fulfilled the Congressional intent. Her administrative course has both enabled a person of limited means to bring a meritorious claim and conserved judicial resources. "In order to minimize the burden on federal courts and still encourage plaintiffs to bring meritorious Title VII suits, the statue allows recovery of fees for successful actions litigated before state administrative and judicial bodies." *Cassas v. Lenox Hill Hospital*, 75 FEP Cases 672 (S.D.N.Y. 1997). "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the

---

[7] Defendant's claim that Plaintiff is attempting "to now relitigate the same facts and issues" as at the CHRO (p.7) and in a bit of verbal overkill, to "relitigat[e] her claims again" is, of course, completely false. No facts or issues already litigated need to be litigated again.

individual citizen, suffers." *DeGaetano v. Smith Barney*, 983 F.Supp. 459 (DC SNY 1997), quoting *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (internal quotations and citations omitted).

## IV. CONCLUSION

For all of the above reasons, Defendant's Motion for Summary Judgment should be denied.

**PLAINTIFF, GALE NESTOR**

By: _____
Philip L. Steele   ct05430
5 Linden Place
Hartford CT 06106
phone & fax: (860)724-5680
email: p.steele@snet.net

I certify that I am this date serving copies of the above to Daniel A. Schwartz, Day, Berry & Howard, CityPlace I, Hartford CT 06103-3499.

_____
Philip L. Steele