UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**GALE NESTOR**                     :  No. 3:03CV359(AVC)

v.                                          :

**PRATT & WHITNEY**              :  March 26, 2004

**PLAINTIFF'S AFFIDAVIT**
**IN OPPOSITION TO SUMMARY JUDGMENT**

1. I am the plaintiff in this action and I waive the confidentiality of my communications with my attorney only to the extent necessary to address the matters discussed in this affidavit and for that limited purpose only.

2. I did not file this action in 1993 but waited until 2003 because I wanted the CHRO first to do everything it could on my behalf. I did not have a lawyer in 1993 because I was concerned that I could not afford one.

3. It has been my hope since filing my charge of discrimination with the EEOC and the CHRO that I would be able to follow the administrative proceeding by going to federal court to obtain any relief provided by federal law that was not available at the CHRO.

4. When it completed its investigation and found probable cause to believe Pratt & Whitney had discriminated against me on account of my sex, the CHRO informed me that it would hold a public hearing on my charge. It recommended to me that I obtain private legal counsel to represent my interests since it was only representing the State of Connecticut.

5. I retained Attorney Philip L. Steele in 1997 and worked out a fee arrangement with him to advise me, work with the CHRO in its prosecution of the public hearing and look after my interests with respect to any ongoing, related problems I was having at Pratt.

6. Attorney Steele informed that he could work on a partly contingent basis that would include a monthly fee and that the amount of the fee would depend on the level of responsibility and what he needed to do on my behalf.

7. Attorney Steele made it clear to me that at such time as we took my claim to federal court, he would have to increase his monthly fee, and that the amount of the increase would depend in part on whether we were successful or unsuccessful at the CHRO.

8. Attorney Steele informed me that he would need to charge me between $750 and $1,000 a month to file the federal court action at that time but that the monthly payment would be considerably less if the issue of liability was decided against Pratt at the CHRO.

9. I was not able to afford to pay legal fees of between $750 and $1,000 a month and concluded that it would only be possible to pursue my claim against Pratt by doing what I had initially set out to do, namely, allowing the CHRO to do everything it could on my behalf.

10. Attorney Steele and I agreed that I would pay him $200 a month toward his hourly fees to advise me, represent my interests at the CHRO and assist the CHRO in its prosecution of the administrative charge against Pratt at the public hearing.

11. In December, 2000, Attorney Steele and I agreed that I would begin paying him $250 a month toward his hourly fees to reflect that his representation of me then needed to include retaliation claims pending at the CHRO.

12. In our agreement of December, 2000, Attorney Steele and I also agreed that if Pratt lost its appeals of the CHRO hearing officer's decision, the monthly payment would increase to $350 to file my claim in federal court for compensatory damages.

13. I am also responsible to pay Attorney Steele for all the time he has been spending on my case if sufficient money is recovered from Pratt to pay his fees in full. I was mindful, therefore, in 1997, that legal fees could fully consume any recovery I might obtain from Pratt unless I was awarded fees in court. My estimation of the risks and affordability of pursuing my case, therefore, led me to conclude that in order to do so I needed to have the CHRO do as much as possible on my behalf.

14. Attorney Steele also explained to me that the hours my case would require (of him, the CHRO and me) would be significantly fewer at the CHRO than the number of hours the case would require if we went directly into court.

15. Attorney Steele explained that litigating the case in court without first establishing liability in the CHRO would require much more work and time because of motions, discovery, writing and other requirements of court, and that the CHRO's attorneys would no longer be available to do much of the work on my case.

16. If I had had to withdraw my case from the CHRO and pay for legal representation in court, I would not have been able to afford to do so, and I believe the finding of discrimination against Pratt would never have come about.

17. I live on my salary from Pratt and have no other significant sources of income.

18. Allowing the CHRO to do everything it could on my behalf before filing my action in federal court has been far more efficient and affordable than any alternative course I could have taken. Indeed, I believe it is the only affordable course that was open to me, and realistically, therefore, the only course.

19. After the Connecticut Appellate Court affirmed the Hearing Officer's decision, Pratt sought to appeal further to the Connecticut Supreme Court but that court declined to hear Pratt's appeal. Still, Pratt delayed nearly a year before paying the judgment until June of 2003.

20. I was prepared to obtain a right-to-sue letter from the EEOC and file this action as soon as the hearing officer made his decision but had to delay because of Pratt's appeals.

_____

Gale Nestor

Subscribed and sworn to before me this 26th day of March, 2004.

_____

Commissioner of the Superior Court