UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 APR 22 A 9:48

**GALE NESTOR**          : No. 3:03CV359(AVC)

v.                       :

**PRATT & WHITNEY**      : April 22, 2004

### PLAINTIFF'S MOTION TO PERMIT SUR-REPLY MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT

Plaintiff moves the Court for permission to file a sur-reply memorandum in opposition to Summary Judgment. Plaintiff so requests in order to address legal arguments and citations raised in Defendant's Reply Memorandum. By its attorney, Daniel Schwartz, Defendant objects to this motion.

**PLAINTIFF, GALE NESTOR**

By: _____
Philip L. Steele   ct05430
5 Linden Place
Hartford CT 06106
phone & fax: (860)724-5680
email: p.steele@snet.net

I certify that I am this date serving copies of the above to Daniel A. Schwartz, Day, Berry & Howard, CityPlace I, Hartford CT 06103-3499.

_____
Philip L. Steele

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 APR 22 A 9: 48
U.S. DISTRICT COURT
HARTFORD, CT.

**GALE NESTOR**  :  No. 3:03CV359(AVC)

v.  :

**PRATT & WHITNEY**  :  April 22, 2004

### PLAINTIFF'S SUR-REPLY MEMORANDUM
### IN OPPOSITION TO SUMMARY JUDGMENT

**I. Defendant Is Asking This Court For a Radical Amendment to Title VII.**

Defendant's Reply Brief in Support of its Motion for Summary Judgment clarifies and underscores the unprecedented and radical interpretation of Title VII it asks this Court to enact. "Congress enacted Title VII to assure equality of employment opportunities ... To this end the EEOC was created and the federal courts were entrusted with ultimate enforcement responsibility." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 471 (1982). Consistent with the goal of giving the national policy against illegal discrimination the "highest priority," *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968), Congress has "long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). Resort to a state administrative proceeding, therefore, does not bar a subsequent federal action under Title VII. *Univ. of Tennessee v. Elliott*, 478 U.S. 781 (1986).

Defendant now would upset the layered administrative and judicial scheme created by this remedial legislation, requiring employees to abandon the administrative process entirely if they would seek full relief for discrimination. This, says Defendant, is required by the principles of res judicata Congress was well aware of when it enacted the

administrative scheme of Title VII. If Defendant is correct, employees who have been discriminated against have to gamble, either forsaking most of the relief Title VII calls for, or bypassing the relatively expeditious and far more affordable administrative route the law encourages. Such a ruling would stab at the heart of Title VII.

In urging this extraordinary legal position, Defendant cites not a single authority that requires such a result in circumstances like these.

As Plaintiff has argued, Defendant's reliance on *Kremer* is misplaced. It is not only that it was the Defendant, not Plaintiff, that appealed the Hearing Officer's decision. Nor is *Kremer* unavailing to Defendant only because plaintiff's administrative action was not a "suit" within the meaning of res judicata. *Kremer* can and should be read as permitting a plaintiff who has *won* an administrative hearing to then proceed to federal court for supplemental relief. Id at 471.

Defendant's reliance on four cases following *Kremer* is also unavailing: *Gonsalves v. Alpine Country Club*, 727 F.2d (1st Cir. 1984); *Hickman v. Electronic Keyboarding, Inc.*, 741 F.2d 230 (8th Cir. 1984); *Davis v. United States Steel Supply*, 688 F.2d 166 (3d Cir. 1982); *Capers v. L.I.R.R.*, 31 FEP Cases 668, 1983 WL 506 (S.D.N.Y. 1983).[1] The plaintiffs in each of these cases, unlike Ms. Nestor, sought a trial de novo after having lost in the state courts. Denying them a second opportunity to establish liability was an

---

[1] Defendant's argument to the contrary in fn. 1, *Bray v. New York Life Ins.*, 851 F.2d 60, 64 (2d Cir. 1988), only applied *Kremer* to a plaintiff who "has entered the state court system," and not to a plaintiff who defended, successfully, an appeal of a favorable agency determination, and only to the preclusion of issues that were or could have been raised in a prior action.

appropriate application of res judicata. Ms. Nestor, in contrast, seeks to relitigate nothing but rather to build on the administrative record in order to gain only supplemental relief.

Defendant has no response to the striking anomaly its interpretation of Title VII would create, that a plaintiff who wins at the administrative level would have lesser rights to relief than one who loses there. As Justice Blackmun's dissenting opinion in *Kremer* noted, "The Court, as it must, concedes that a state agency determination does not preclude a trial de novo in federal district court. Ante, at 7-9 and 8, n7. Congress made it clear beyond doubt that state agency findings would not prevent the Title VII complainant from filing suit in federal court." 456 U.S. at 487.

## II. Defendant Has Not Shown That, Even Applying Res Judicata To Title VII, Connecticut Would Bar A CHRO Complainant From Seeking Relief Unavailable Administratively.

Defendant's reliance on *Fink v. Golenbock*, 238 Conn. 183 (1996) and *Duhaime v. American Reserve Life Ins. Co.*, 200 Conn. 360 (1986) is misplaced. As Defendant concedes, *Fink* holds that a judgment is final only as to any other matter which might have been offered for that purpose. As Ms. Nestor was legally prevented from offering the claims now sought either in the CHRO or in Defendant's appeals therefrom, *Fink* permits the course she has taken. Likewise, as Defendant must also concede, *Duhaime* only bars a plaintiff from seeking "remedies or forms of relief *not demanded* in the first *action*." 200 Conn. at 365 (emphasis added). Plaintiff did not demand the remedies she seeks here because they were not available administratively. Defendant has failed to meet its burden to show that Connecticut would apply res judicata in the circumstances of the instant action.

3

Defendant makes two significant errors in arguing that *Patzer v. Bd. of Regents*, 763 F.2d 851 (7th Cir. 1985), should be distinguished from the instant case.[2] First, in arguing that Patzer was not allowed to recover back pay at the administrative level, it acknowledges that it is fundamental notions of fair play and substantial justice that should govern here, not technical abstractions of procedural law. And that is certainly the proper course in applying Congress's remedial intent behind Title VII. Second, Defendant again claims that Plaintiff had "merely" to avail herself of state court proceedings and all the remedies she seeks here would have been available there. Defendant has thus ignored the plain differences between Title VII and the Connecticut statute which Plaintiff discussed in her prior brief.

Defendant now makes explicit an argument it had only hinted at in its initial brief, claiming (p. 8) that Ms. Nestor used the CHRO "as a tactical shield, i.e. to limit the employer's use of discovery, motions and other procedures." It claims that Ms. Nestor made a tactical decision to stay at the CHRO "to prevent the Defendant from engaging in discovery and other pretrial procedures," and suggests it was harmed by the admission of hearsay contrary to the federal rules of evidence. "Having made a conscious decision to gain the advantages of the CHRO proceeding, the Plaintiff must be willing to live with the

---

[2] Defendant's attempt, fn. 5, to distinguish *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980) is without merit. Its citation to *Washington v. Department of Human Resources*, 759 F.Supp. 825, 827 (M.D.Ga. 1991) supports Ms. Nestor's claim here, noting that the claimant in *Carey* "never had a chance to assert a valid claim for attorney's fees *in the state proceeding* because the applicable state law did not allow for an award of attorney's fees." The proper comparison is to Ms. Nestor's state proceeding, where state law did not allow for an award of fees, not to a theoretical suit she was neither required nor encouraged to file.

4

disadvantages, namely a more limited scope of recovery." Obviously, Defendant cites no authority for this dubious proposition.

Nor does Defendant indicate what hearsay allegedly would have been disallowed under the federal rules or what discovery it was barred from conducting.[3] It thus fails to consider that avoiding the admission of Defendant's hearsay may well have been one of the advantages of leaving the CHRO for federal or state court which Ms. Nestor had to forsake, and that federal discovery may have benefited her more than Defendant. Its impression that federal procedures are designed for the benefit only of defendants notwithstanding, not being able to afford federal court clearly prevented Ms. Nestor from engaging in discovery and other pretrial procedures as much as it prevented Defendant from doing so.[4] Plaintiffs can gain many things from going to federal court in lieu of the administrative process—but only if they can afford to do so.

Even if Plaintiff can be deemed, as Defendant argues, to have *chosen to stay* in the CHRO, such a choice "does not weigh in favor of preclusion." *Univ. of Tennessee v. Elliott*, 478 U.S. 781, fn. 5 (1986) ("the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and

---

[3] Defendant, furthermore, makes no claim that it sought any discovery or procedure which the CHRO denied, and fails to indicate how anything it could have done, had the parties been in federal court, would have made a difference in the case.

[4] Defendant has also argued that its defense against Nestor's claims was hampered by the limited standard of review in its state appeals. Yet one of the cases it now cites points out that a court judgment reviewing an administrative proceeding might be denied res judicata effect if the court's standard of review were limited. *Davis v. United States Steel Supply*, 688 F.2d 166, 172 (3d Cir. 1982).

5

other applicable state and federal statutes," quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48 (1974) (footnote omitted)).

Defendant's reply brief offers no response to many of the arguments set forth by Plaintiff. Most striking is Defendant's silence regarding the failure of its legal claim to serve the underlying purpose of the doctrine of res judicata. Thus it is not only the letter of the law of res judicata that its challenge fails. Defendant misses the spirit of that law even more. "The law of res judicata, much more than most other segments of law, has rhyme, reason, and rhythm—something in common with good poetry. Its inner logic is rather satisfying. It consists entirely of an elaboration of the obvious principle that a controversy should be resolved once, not more than once." *Univ. of Tennessee v. Elliott*, 478 U.S. 781, fn. 6 (1986), quoting 4 K. Davis, Administrative Law Treatise §21.9, p. 78 (2d ed. 1983). Congress, the Court said in *Kremer*, "did not envision *full litigation* of a single claim in both state and federal forums." 102 S.Ct. at 1893 (emphasis added). Plaintiff has thus avoided what *Kremer* sought to prevent. Her suit requires no second litigation or relitigation, or inconsistent decisions, but only the determination of the extent of emotional distress she has suffered and the amount of punitive damages and attorney's fees which should be awarded.

Defendant has failed not only to show that the doctrine of res judicata was intended to apply to circumstances like those in this case but has failed to demonstrate that any of the ends of res judicata have been undermined because Plaintiff did not abandon the administrative process dictated and encouraged by Title VII in order to litigate her claims in the Connecticut courts. Ms. Nestor has thus fulfilled the Congressional intent. Her

administrative course has both enabled a person of limited means to bring a meritorious claim and conserved judicial resources.

For all of the foregoing reasons, Defendant's attempt to have this Court virtually repeal some of the most important provisions of Title VII should be rejected.

**PLAINTIFF, GALE NESTOR**

By: _____
Philip L. Steele   ct05430
5 Linden Place
Hartford CT 06106
phone & fax: (860)724-5680
email: p.steele@snet.net


I certify that I am this date serving copies of the above to Daniel A. Schwartz, Day, Berry & Howard, CityPlace I, Hartford CT 06103-3499.

_____
Philip L. Steele

7